**No. 22-16671**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DOMONIC RONALDO MALONE,

*Petitioner-Appellee,*
v.

BRIAN WILLIAMS, WARDEN

*Respondents – Appellants.*

---

On Appeal from the United States District Court
for the District of Nevada
No. 2:18-cv-01146-RFB-NJK
Hon. Richard F. Boulware

---

## RESPONDENTS – APPELLANTS PETITION FOR REHEARING EN BANC PURSUANT TO FED. R. APP. P. 35.

---

AARON D. FORD (Bar No. 7704)
Attorney General
MATTHEW S. JOHNSON (Bar No. 12412)
Senior Deputy Attorney General
HEATHER D. PROCTER (Bar No. 8621)
Chief Deputy Attorney General
Office of the Nevada Attorney General
100 North Carson Street
Carson City, Nevada 89701
(775) 684-1124 (phone)
(775) 684-1108 (fax)
msjohnson@ag.nv.gov
hprocter@ag.nv.gov
*Attorneys for Respondents-Appellants*

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF REHEARING EN BANC ...................................1

STATEMENT OF THE CASE................................................................................3

ARGUMENT ..........................................................................................................6

   I. The Nevada Supreme Court Was Not Required to Disregard Malone's Statements About Feeling Forced to Represent Himself or Otherwise Defer to Ninth Circuit Precedent on Equivocality........................................................6

   II. The Panel's Decision Conflicts With Ninth Circuit Precedent About Evaluating Mixed Questions of Law and Fact. ...................................................10

   III. The Panel's Decision Conflicts With Its Own Precedent in *Stenson*.............12

   IV. The Panel's Interpretation of What Occurred During the March 25, 2010 Hearing Is, at Most, Debatable. ..........................................................................13

   V. The Panel's Interpretation of What Occurred During a Hearing On Malone's Written Memorandum Is, at Most, Debatable.......................................................16

CONCLUSION ......................................................................................................19

STATEMENT OF RELATED CASES ..................................................................20

CERTIFICATE OF COMPLIANCE......................................................................20

# TABLE OF CASES AND AUTHORITIES CITED

## Cases

*Adams v. Carroll*,
  875 F.2d 1441 (9th Cir. 1989) ........................................................................1, 8

*ASARCO Inc. v. Kadish*,
  490 U.S. 605 (1989) ...................................................................................2, 7

*Brewer v. Williams*,
  430 U.S. 387 (1977) ..................................................................................8, 10

*Burt v. Titlow*,
  571 U.S. 12 (2013) ..........................................................................................7

*Clark v. Broomfield*,
  83 F.4th 1141 (9th Cir. 2023) .......................................................................10

*Cuyler v. Sullivan*,
  446 U.S. 335 (1980) ..................................................................................8, 10

*Faretta v. California*,
  422 U.S. 806 (1975) ............................................................................. passim

*Iowa v. Tovar*,
  541 U.S. 77 (2004) ..........................................................................................6

*Lambert v. Blodgett*,
  393 F.3d 943 (9th Cir. 2004) .................................................................. 11, 12

*Lockhart v. Fretwell*,
  506 U.S. 364 (1993) ........................................................................................7

*Lopez v. Smith*,
  574 U.S. 1 (2014) ................................................................................. 2, 7, 8

*Malone v. Williams*,
  No. 22-16671, 2024 WL 81107 (9th Cir. Jan. 8, 2024) .......................... passim

*Marshall v. Rodgers*,
  569 U.S. 58 (2013) ..........................................................................................6

*Meeks v. Craven*,
  482 F.2d 465 (9th Cir. 1973) ..........................................................................2

*Miller v. Fenton*,
  474 U.S. 104 (1985) ......................................................................................10

*Rice v. Collins*,
  546 U.S. 333 (2006) .................................................................... 2, 16, 17, 18

*Robinson v. Borg*,
  918 F.2d 1387 (9th Cir. 1990) .......................................................................10

*Scott v. Arnold*,
  962 F.3d 1128 (9th Cir. 2020) .........................................................................7

*Shoop v. Hill,*
    139 S. Ct. 504 (2019) ...................................................................8
*Stenson v. Lambert,*
    504 F.3d 873 (9th Cir. 2007)........................................ 1, 10, 12, 13
*Tamplin v. Muniz,*
    894 F.3d 1076 (9th Cir. 2018) ....................................................10
*U. S. ex rel. Lawrence v. Woods,*
    432 F.2d 1072 (7th Cir. 1970) ......................................................7
*United States v. Audette,*
    923 F.3d 1227 (9th Cir. 2019) ..................................................2, 10
*United States v. Dujanovic,*
    486 F.2d 182 (9th Cir. 1973) ........................................................1
*United States v. Kennedy,*
    564 F.2d 1329 (9th Cir. 1977) ......................................................2
*United States v. Marks,*
    530 F.3d 799 (9th Cir. 2008) ......................................................11
*United States v. Robinson,*
    913 F.2d 712 (9th Cir. 1990) .....................................................2, 9
*Wood v. Allen,*
    558 U.S. 290 (2010) ........................................... 2, 16, 17, 18
*Woodford v. Visciotti,*
    537 U.S. 19 (2002) ......................................................................7
*Yarborough v. Alvarado,*
    541 U.S. 652 (2004) .....................................................................6

## Other Authorities

§ 2254(d)(1) ........................................................... 10, 11, 12
28 U.S.C. § 2254(d)(2).............................................. 4, 11, 12

## Rules

FRAP 35(b)(1)(A)..........................................................................1
FRAP 35(b)(1)(B) ..........................................................................1

**STATEMENT IN SUPPORT OF REHEARING EN BANC**

Over the dissent of Judge Owens, the panel issued a decision that conflicts with Supreme Court and Circuit precedent in three different ways, requiring consideration by the full court to secure and maintain uniformity of the Court's decisions. *See* FRAP 35(b)(1)(A). The second issue raises a question of exceptional importance as to whether a state court is bound by this Circuit's interpretations of the United States Constitution that have not been announced by the Supreme Court. *See* FRAP 35(b)(1)(B).

First, "the facts here are directly analogous to *Stenson* [*v. Lambert*, 504 F.3d 873 (9th Cir. 2007)]," where this Court upheld the state supreme court's decision as required by the Anti-terrorism and Effective Death Penalty Act (AEDPA). *Malone v. Williams*, No. 22-16671, 2024 WL 81107 (9th Cir. Jan. 8, 2024) (Owens, J., Dissenting). Yet the panel reached a different outcome here, which is incompatible with the deferential review required by AEDPA.

Second, this Circuit's interpretation of the unequivocality requirement for self-representation has *never* been based on the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1975). *See, e.g.*, *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) ("it was a prerequisite to self-representation in this circuit well before *Faretta, . . .* and has remained so since."); *United States v. Dujanovic*, 486 F.2d 182, 186 (9th Cir. 1973) ((citing *Meeks v. Craven*, 482 F.2d

465, 467 (9th Cir. 1973)); *United States v. Kennedy*, 564 F.2d 1329, 1340 (9th Cir. 1977) (citing *Meeks* not *Faretta*); *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990) (relying on *Meeks* and its progeny not *Faretta*); *United States v. Audette*, 923 F.3d 1227, 1234 (9th Cir. 2019) (same). Yet the panel granted Malone habeas relief because the Nevada Supreme Court did not follow that Circuit precedent. The Nevada Supreme Court had no obligation to do so. *See*, *e.g.*, *Lopez v. Smith*, 574 U.S. 1, 7 (2014) ("Circuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced"); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("[S]tate courts . . . possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law.").

Finally, the panel's interpretation of what occurred during two hearings before the state trial court is, at most, debatable, which demonstrates that the panel failed to defer to the state courts' reasonable factual determinations as required by AEDPA. *Rice v. Collins*, 546 U.S. 333, 335 (2006) (explaining that a federal court may not, "set aside reasonable state-court determinations of fact in favor of its own debatable interpretation of the record"); *Wood v. Allen*, 558 U.S. 290, 301 (2010) (explaining that when "'[r]easonable minds reviewing the record might disagree'" about the finding in question, a federal court may not supersede the state court's

determination on habeas review.); *Malone*, 2024 WL 81107 at 2-3 (Owens, J., Dissenting) (disagreeing with the panel about whether, "Malone, unprompted, asked for his attorneys back, then changed his mind."). The panel's decision, therefore, must be corrected.

## STATEMENT OF THE CASE

A grisly discovery in the Nevada desert led to the eventual arrest of petitioner Dominic Malone (Malone) and his co-defendant for kidnapping and beating two women to death and leaving their naked bodies in the desert. 14-ER-2436-49. After a 21-day jury trial, Malone was convicted of first-degree kidnapping and murder, but his attorneys from the Special Public Defender's (SPD) Office convinced the jury not to sentence him to death even though the jury determined that there were no mitigating circumstances sufficient to outweigh the aggravating circumstances. 22-ER-4536-50.

Malone appealed, raising a *Faretta* claim challenging the state district court's decision to revoke his right to self-representation. 23-ER-4595-98. He argued that he did not equivocate as to self-representation. 23-ER-4595-98.

The prosecution disagreed, arguing that Malone "equivocated, obstructed, delayed and otherwise abused his right to self-represent," by purposefully making statements after the *Faretta* hearing to inject error into the record to manufacture issues on appeal. 23-ER-4641, 4645. The prosecution pointed the Nevada

Supreme Court to Malone's post-*Faretta* request on March 25, 2010, to get his counsel "back," and his subsequent equivocation that he did not want his counsel back "at this point in time." 23-ER-4646. The prosecution also directed the appellate court to Malone's January 25, 2011 accusation that the trial court denied him the right to have representation by counsel, quoted from his statement to the court that the proceedings might "get to the point where I need not no longer represent myself," and pointed the court to Malone's memorandum to the trial court claiming he did not want to represent himself and was forced to represent himself. 23-ER-4647. The appellees argued that Malone created such uncertainty about whether he would continue to represent himself or revoke that right among all other participants in the case, that the trial court ultimately changed its mind about severance and allowed Malone's co-defendant to sever the trial. *Id.* at 4648-49.

On appeal, after a lengthy, detailed decision, three justices of the Nevada Supreme Court affirmed the state court's decision to revoke Malone's right to self-representation after determining that Malone equivocated. 1-ER-61-63.

The federal district court concluded that the Nevada Supreme Court's determination that "Malone's request to represent himself was equivocal was an unreasonable determination of the facts in light of the evidence under 28 U.S.C. § 2254(d)(2)." 1-ER-16. Instead, it concluded as a matter of fact, that "the record

indicates that his position—consistently—from at least December 3, 2009, when he filed the motion that resulted in his self-representation, was that he wished to have counsel other than the SPD appointed for him, but if he could not have other counsel appointed, he wished to represent himself," "Malone never wavered from that position after he was granted leave to represent himself,"  and "Malone never equivocated about his decision to represent himself as opposed to being represented by the SPD" after his *Faretta* hearing.  1-ER-14-15.

In a 2-1 decision, a panel of this Court affirmed the district court's decision to grant habeas relief.  Judge Pregerson adopted the reasoning of the federal district court that the Nevada Supreme Court's determination was based on an unreasonable determination of facts because:

> "Malone was not equivocal about his desire to represent himself rather than have [appointed counsel] represent him. . . . Malone never wavered from that position after he was granted leave to represent himself. While Malone's request to represent himself was conditional in that he might have accepted different counsel, it was not equivocal because he was clear if [appointed counsel] was his only option for appointed counsel then he would represent himself."

*Malone*, 2024 WL 81107 at 5-6 (quoting 1-ER-14-15).   Judge Pregerson also asserted that the determination was unreasonable because Malone's expressions of feeling forced could not render his request equivocal.   *Id*.   Judge Rawlinson concurred in the result without further statement.   *Id*. at 7.   And Judge Owens

/ / /

-5-

dissented, stating "I cannot say Malone met the AEDPA standard." *Id.* (Owens, J., dissenting).

**ARGUMENT**

### I. The Nevada Supreme Court Was Not Required to Disregard Malone's Statements About Feeling Forced to Represent Himself or Otherwise Defer to Ninth Circuit Precedent on Equivocality.

Since the Supreme Court indicated in 1975 that a *Faretta* request for self-representation must be unequivocal to waive a defendant's right to counsel, it has not defined the contours of when a request for self-representation should be considered unequivocal or, instead, equivocal. *Faretta*, 422 U.S. at 835. Therefore, courts have broad leeway in reaching outcomes in case-by-case determinations about whether a defendant's request is equivocal. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). The tension between the clearly established right to counsel, *Iowa v. Tovar,* 541 U.S. 77, 80-81 (2004), and the clearly established right to self-representation, *Faretta,* 422 U.S. at 807, necessarily affords state courts broad leeway under habeas review in the area between the two rights. *Marshall v. Rodgers,* 569 U.S. 58, 61-64 (2013) (per curiam).

"AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow,*

571 U.S. 12, 19 (2013). And federal courts should "presum[e] that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). "[S]tate courts . . . possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law." *ASARCO Inc.*, 490 U.S. at 617; *see also Lockhart v. Fretwell,* 506 U.S. 364, 376 (1993) (Thomas, J., concurring) ("[N]either federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."); *U. S. ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1075 (7th Cir. 1970) ("Until the Supreme Court of the United States has spoken, state courts are not precluded from exercising their own judgment upon questions of federal law.").

Under AEDPA, state courts are not required to follow the holdings of federal circuits that provide refined definitions or interpretations of Supreme Court holdings. *Lopez*, 574 U.S. at 7 ("Circuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced."). "[C]learly established federal law for habeas purposes cannot be found in circuit courts' expansion or interpretation of Supreme Court precedent." *Scott v. Arnold*, 962 F.3d 1128, 1132 (9th Cir. 2020).

State and federal courts alike are required to "indulge in every reasonable presumption against waiver," of the right to counsel. *Brewer v. Williams*, 430 U.S.

387, 404 (1977). "[T]he question of waiver [is] not a question of historical fact, but one which, . . . requires application of constitutional principles to the facts as found." *Brewer*, 430 U.S. at 403. This makes questions involving waiver a mixed determination of law and fact. *Cuyler v. Sullivan*, 446 U.S. 335, 342 (1980).

The controlling panel decision (as did the district court's order granting habeas relief) violates these principles by basing the decision to grant habeas relief, in part, on Circuit precedent offering refined interpretations of the meaning of unequivocal. But prior circuit precedent cannot provide a basis to establish that the Nevada Supreme Court's decision is unreasonable under AEDPA. *Lopez*, 574 U.S. at 7. Only holdings of Supreme Court opinions that existed at the time of the challenged state-court decision are relevant for defining the parameters of the law when applying AEDPA. *Shoop v. Hill*, 139 S. Ct. 504, 509 (2019) ("On remand, the court should determine whether its conclusions can be sustained based strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.").

Moreover, this Circuit's interpretation of the unequivocality-requirement for self-representation predates *Faretta*, is not based on *Faretta*, and extends well beyond the holding of that opinion. *See, e.g.*, *Adams*, 875 F.2d at 1444 ("Although *Faretta* mentions this requirement in passing, it was a prerequisite to self-representation in this circuit well before *Faretta* and has remained so since."). The

federal courts erred by holding the Nevada Supreme Court to legal standards found in federal circuit precedent offering refined definitions and interpretations of equivocality that is not clearly established federal law.

Both the federal district court and the panel relied on this Court's decision in *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir.1990), for the proposition that "[t]he fact that some of [the defendant's] statements of his preference to proceed pro se were accompanied by expressions of his feeling 'forced' to do so does not render those statements equivocal." *Malone*, 2024 WL 81107 at 4-5; 1-ER-16. Based on *Robinson*, the panel adopted the federal district court's view that the Nevada Supreme Court's equivocality determination was unreasonable because "the Nevada Supreme Court made much of Malone's statement in his June 29, 2011, filing, that he was 'forced' into representing himself," 1-ER-16; apparently concluding that statements about being forced cannot enter into a state court's equivocality-determination. *Malone*, 2024 WL 81107 at 4-5.

But *Faretta* does not stand for the proposition that a defendant's statements about being forced to represent himself cannot be evidence of equivocality. *Faretta*, 422 U.S. at 814 (holding that the State cannot force *a lawyer* upon a

/ / /

/ / /

/ / /

-9-

defendant).[1]   And this Circuit's own post-AEDPA precedent conflicts with the federal district court and the panel's interpretation of *Robinson*.  *See Stenson*, 504 F.3d at 883 (relying on statements by Stenson that "he felt the court and his existing counsel were forcing him to [represent himself]," in holding that the state supreme court's holding that Stenson's request at trial was not unequivocal was not based on an unreasonable determination of facts).  This Court should not allow these conflicts to persist.

## II.     The Panel's Decision Conflicts With Ninth Circuit Precedent About Evaluating Mixed Questions of Law and Fact.

The panel's decision also conflicts with other Ninth Circuit precedent because the question of waiver of the right to counsel is a mixed question of law and fact.  *Brewer*, 430 U.S. at 403; *Cuyler*, 446 U.S. at 342; *Miller v. Fenton*, 474 U.S. 104 (1985); *Robinson v. Borg*, 918 F.2d 1387, 1390 (9th Cir. 1990) (explaining that what was said constitutes a factual finding but whether "words constitute a request for counsel is a legal determination"); *see also Tamplin v. Muniz*, 894 F.3d 1076, 1084 (9th Cir. 2018) (reviewing *Faretta* waiver as a legal determination under § 2254(d)(1)); *Clark v. Broomfield*, 83 F.4th 1141, 1150 (9th Cir. 2023) (same); *but see United States v. Marks*, 530 F.3d 799, 816 (9th Cir.

---

[1] This Court's decision in *Audette* indicating that a defendant's "equivocal statements earlier in the hearing" cannot "taint[ ] his final, unequivocal waiver of counsel," is also not based on *Faretta* and state courts are not required to follow it. *See Audette*, 923 F.3d at 1234-35.

2008) (concluding for the first time in this Circuit that the question of whether a waiver is unequivocal is a factual finding). "[A] federal court reviewing a state court conclusion on a mixed issue involving questions both of fact and law must first separate the legal conclusions from the factual determinations that underlie it" and apply § 2254(d)(1) to (1) "the state court's conclusion as to the ultimate legal issue," and (2) "the application of federal law to the factual findings . . . in order to ascertain whether the decision is contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent." *Lambert v. Blodgett*, 393 F.3d 943, 977-78 (9th Cir. 2004) (internal citations and quotations omitted). The federal district court and the controlling order erroneously analyzed the ultimate legal issue as to whether the waiver was unequivocal and the Nevada Supreme Court's application of federal law to its factual findings under § 2254(d)(2) instead of § 2254(d)(1) in violation of *Lambert* and failed to separate the legal conclusions from the factual determinations that underlie it. *Id*.

The federal courts did not find the Nevada Supreme Court's factual determination that "Malone also wrote a memorandum to the district court stating that (1) he had 'been forced to represent himself,'" to be unreasonable. 1-ER-62. Instead, it challenged the Nevada Supreme Court's legal determination that it could consider his statement about force in conducting its equivocality-analysis. Under

/ / /

-11-

this Circuit's own precedent, the review of this determination must be done under § 2254(d)(1) not (d)(2). *Lambert*, 393 F.3d at 977-78.

## III. The Panel's Decision Conflicts With Its Own Precedent in *Stenson*.

The panel's decision conflicts with *Stenson*. 504 F.3d at 883. In *Stenson*, applying AEDPA, this Court upheld the state supreme court's interpretation of the defendant's statements as evidence of equivocation about his desire to represent himself. *Stenson*, 504 F.3d at 883. The Court held that a "conditional" request "can be an indication to the court, in light of the record as a whole, that the request was not unequivocal." *Id*.

The record in Stenson's case revealed that he made statements that he did not really want to represent himself, on occasion did not refute the judge's conclusion that he did not want to represent himself, took steps to locate another attorney, and made statements that he felt forced to represent himself. *Id*. at 883. According to the Court, this was evidence that Stenson "failed consistently to maintain his desire to represent himself." *Id*. at 884; *cf. Malone*, 2024 WL 81107 at 5 ("That was clearly not the situation here."). Like *Stenson*, Malone made statements that he did not really want to represent himself, 5-ER-1069, did not refute the trial judge, but agreed that it was a huge mistake to represent himself, 5-ER-1049, looked for other attorneys, 4-ER-726, and made statements that he felt forced to represent himself, 5-ER-1069. If the Washington Supreme Court's

-12-

determination was entitled to deference under those facts, the Nevada Supreme Court's determination was too. *Stenson*, 504 F.3d at 883. Both decisions involved conditional requests for self-representation that the state supreme court concluded were equivocal and "the facts here are directly analogous to *Stenson*." *Malone*, 2024 WL 81107 at 2 (Owens, J., Dissenting).

## IV. The Panel's Interpretation of What Occurred During the March 25, 2010 Hearing Is, at Most, Debatable.

The state court appointed attorneys from the SPD Office, who represented Malone for more than three-and-a-half years before he requested a *Faretta* hearing. 3-ER-0346; 4-ER-704-39. Following a *Faretta* canvass, the trial court granted Malone's request to represent himself and appointed the attorneys from the SPD's Office as his standby counsel. 4-ER-728.

Two-and-a-half months later at the calendar call on March 25, 2010, standby counsel from the SPD Office told the court that Malone told counsel that "he desires us to assume the case at this time." 4-ER-790. Malone told the court, "I did would like to have my counsel back." 4-ER-793. The court responded, "Sir, am I hearing you correct that you do not wish to represent yourself now?" 4-ER-794. Malone told the court, "At this point in time, that's what I was working on, sir." *Id*. During the hearing the court asked, "Are you saying today you do not wish to represent yourself. You want representative of the Special Public

/ / /

-13-

Defender's Office to represent you?" *Id*.  Malone stated, "at this point in time no, sir." *Id*.

The Nevada Supreme Court referenced this hearing in its opinion denying Malone's *Faretta* claim noting that "[a]t one hearing, Malone indicated that he wanted counsel appointed." *See* 1-ER-62.  "However, after a discussion with the district court, he decided to continue representing himself." *Id*.  The federal district court entirely omitted this March hearing from its decision granting habeas relief and failed to discuss the facts therein.  1-ER-02-39.

Two members of the panel expressly disagree about what occurred during this hearing.[2]  In his dissenting opinion, Judge Owens noted that, in the March hearing "Malone, unprompted, asked for his attorneys back, then changed his mind." *Malone*, 2024 WL 81107 at 6 (Owens, J., dissenting).  Judge Pregerson disagrees, asserting that "Malone never, 'asked for his attorneys back, and then changed his mind.'"

> Rather, Malone stated, 'I did would like to have my counsel back,' and made the 'at this point in time' comment as part of his explanation that he might have wanted counsel back at some point in the past, had they not caused unnecessary delays. Moreover, Malone's statements were prompted by the trial court's question, stated in open court, 'It probably would have been a good idea to have an attorney, wouldn't it[?]'

*Malone*, 2024 WL 81107 at 6 (quoting 4-ER-792-94).

---

[2] Judge Rawlinson's interpretation is unknown due to her silent concurrence.

At most, Judge Pregerson's assertion is a debatable interpretation of what occurred during the March hearing. 7-ER-788-800. Malone's attorneys would not have told the state district court that "he desires us to assume the case at this time," if Malone was referring to a past desire. 4-ER-790. And the panel's conclusion about what prompted Malone's statement is undermined by the twelve unrelated intervening questions and responses in the transcript. 7-ER-792-93. Regardless, even if Judge Pregerson's interpretation of the record is correct, it is still evidence of equivocation. Malone had only been without his attorneys for two-and-a-half months. If he wanted his attorneys "back" at some point in the past, as Judge Pregerson suggests, this means he equivocated about his right to self-representation in less than two-and-a-half months after his *Faretta* hearing.

Under either interpretation, the district court and the panel's factual determination that "Malone never wavered" after the *Faretta* hearing from the position that "he wished to have counsel other than the SPD appointed for him, but if he could not have other counsel appointed, he wished to represent himself," conflicts with the record. Malone either wavered at the March hearing about getting his SPD attorneys back, or he wavered at some point in the past during the two-and-a-half months that transpired between the *Faretta* hearing and his March hearing.

-15-

The Nevada Supreme Court's factual determination that "[a]t one hearing, Malone indicated that he wanted counsel appointed," was not an unreasonable determination of fact under AEDPA. *See* 1-ER-62. At most, it was debatable. And a federal court may not, "set aside reasonable state-court determinations of fact in favor of its own debatable interpretation of the record." *Rice*, 546 U.S. at 335. Where, as here, "'[r]easonable minds reviewing the record might disagree'" about whether Malone wavered about having his SPD attorneys reappointed, "'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood*, 558 U.S. at 301 (quoting *Rice*, 546 U.S. at 341-42).

## V.  The Panel's Interpretation of What Occurred During a Hearing On Malone's Written Memorandum Is, at Most, Debatable.

In a memorandum dated June 29, 2011, Malone wrote the following paragraph.

> *The Defendant did not want to represent himself* he has motion this Court for help only to be denied by this Court on numerous occasion. Which created the forced situation.

5-ER-1069 (emphasis added). In a subsequent hearing on the memorandum, Malone confirmed that everything contained within the memorandum was true and correct. 5-ER-1079. The trial court then read several sections from the memorandum including that "[a]nother section in his [memorandum] states the Defendant did not want to represent himself." *Id*. at 1080. The trial court then stated, "Sir, if you feel you have been forced to represent yourself and there's  --

-16-

and that you did not want to represent yourself, your request to represent yourself is now vacated or is denied."  5-ER-1080.

Apparently referring to this last statement by the trial court, the appellate panel concluded that, "the trial court mischaracterized Petitioner's written memorandum as stating that Petitioner 'did not want to represent [himself].'" *Malone*, 2024 WL 81107 at 6.  In other words, the panel concludes that by directly quoting word for word from Malone's memorandum, the trial court mischaracterized it.  The panel's interpretation cannot stand under the Supreme Courts' AEDPA cases requiring federal courts to defer to state court factual findings.  *See*, *e.g. Wood*, 558 U.S. at 301; *Rice*, 546 U.S. at 335.  Furthermore, the Nevada Supreme Court did not cite the "you did not want to represent yourself" characterization of Malone's memorandum in making its equivocality determination.  1-ER-61-62.  It quoted from the memorandum itself.

> Malone also wrote a memorandum to the district court stating that (1) he had "been forced to represent himself," (2) he 'did not want to represent himself,' (3) the district court refused to help him, and (4) he had 'always been more than willing to accept proper assistance . . . however this Court has not allowed him.'

1-ER-61.

The Nevada Supreme Court did refer to a later colloquy between Malone and the trial court from the hearing transcript in its written decision.

-17-

> At the hearing regarding this memorandum, the district court told Malone that it was clear from his pleadings that he 'did not want to represent himself,' and Malone responded affirmatively.

1-ER-61-62. But, that sentence in the Nevada Supreme Court's decision also reflects exactly what occurred in that portion of the hearing transcript.

> THE COURT : Sir, your pleadings very clear. The Defendant did not want to represent himself in this matter.
>
> THE DEFENDANT : Yes. Yes, sir.
>
> THE COURT: Okay. Your wish is granted, sir.

5-ER-1081. This almost verbatim recitation of the memorandum and trial transcript by the Nevada Supreme Court cannot be an unreasonable determination of fact under AEDPA deference. *Wood*, 558 U.S. at 301; *Rice*, 546 U.S. at 335.

Instead of applying AEDPA deference to the Nevada Supreme Court's factual determinations as reflected in the decision itself, the panel instead erroneously faulted the Nevada Supreme Court for its application of federal law to those facts because it did not defer to the Ninth Circuit's own understanding of equivocality.

*** 

-18-

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for en banc reconsideration.

RESPECTFULLY SUBMITTED this 21st day of February, 2024.

AARON D. FORD
Attorney General

By:    /s/ Matthew S. Johnson
MATTHEW S. JOHNSON (Bar No. 12412)
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
Telephone: (775) 684-1100
Fax: (775) 684-1108
msjohnson@ag.nv.gov
*Attorney for Respondents-Appellants*

By:    /s/ Heather Procter
HEATHER PROCTER (Bar No. 8621)
Chief Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
Telephone: (775) 684-1100
Fax: (775) 684-1108
hprocter@ag.nv.gov
*Attorney for Respondents-Appellants*

## STATEMENT OF RELATED CASES

Respondents-Appellees know of no related cases.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1,

the attached answering brief is proportionately spaced, has a typeface of 14 points

or more and contains 4,170 words.

RESPECTFULLY SUBMITTED this 21st day of February, 2024.

AARON D. FORD
Attorney General

By:  /s/ Matthew S. Johnson
MATTHEW S. JOHNSON (Bar No. 12412)
Senior Deputy Attorney General

## CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General and that on this 21st day of February, 2024, I served a copy of the foregoing **RESPONDENT-APPELLEES' PETITION FOR REHEARING EN BANC PURSUANT TO FED. R. APP. P. 35.** by Ninth Circuit ECF electronic filing to:

Lisa A. Rasmussen, Esq.
The Law Office of Kristina Wildeveld & Associates
550 E. Charleston Blvd., Suite A
Las Vegas, NV 89104
lisa@veldlaw.com

/s/ April Markiewicz